# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EULALIA PEREZ,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 1:17-cv-00112-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING ACTION FOR FURTHER ADMINISTRATIVE PROCEEDING<br><br>(ECF Nos. 17, 21) |

## I.

## INTRODUCTION

Plaintiff Eulalia Perez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from hearing loss, vision problems, diabetes mellitus, hypertension with dizziness, degenerative changes of the lumbar spine with nerve root compression, minimal degenerative changes of the left knee, minimal degenerative changes of the right AC joint, mild degenerative changes of the left shoulder, and obesity. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 9, 10.)

1

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on June 21, 2013. (AR 187-197.) Plaintiff's applications were initially denied on November 6, 2013, and denied upon reconsideration on January 14, 2014. (AR 123-127, 132-137.) Plaintiff requested and received a hearing before Administrative Law Judge Christine Hilleren ("the ALJ"). Plaintiff appeared for a hearing on June 3, 2015. (AR 34-84.) On August 18, 2015, the ALJ found that Plaintiff was not disabled. (AR 19-29.) The Appeals Council denied Plaintiff's request for review on November 21, 2016. (AR 2-6.)

### A. Hearing Testimony

Plaintiff appeared with counsel and testified at a hearing on June 3, 2015. (AR 40-74.) Plaintiff was born on October 20, 1958, and was 55 years old on the date of the hearing. (AR 40.) Plaintiff is 5 feet tall and weighs 187 pound. (AR 40.) Plaintiff is not married and has five children. (AR 40-41.) Plaintiff lives with her cousin. (AR 41.) She went to school through the eighth grade in Monterey, California. (AR 42.) She does have some difficulty reading, understanding and pronouncing long words. (AR 43.) Plaintiff cannot read a magazine or a newspaper. (AR 43.) She is able to read a grocery list. (AR 43.)

Plaintiff had a driver's license but it expired long ago. (AR 41.) The last time she drove was about fifteen years ago. (AR 41.) She gets around by bus. (AR 41.) Plaintiff takes the bus once or twice a week to go to the store or doctor appointments. (AR 42.) Plaintiff does not have any problems taking the bus. (AR 42.) Plaintiff has had medical insurance for the past year. (AR 42.)

Plaintiff has not worked since February 2013. (AR 43.) She did receive unemployment benefits after she stopped working. (AR 44.) Plaintiff had to indicate that she was ready, willing, and able to work to receive the unemployment benefits but she was not ready, willing, and able to work. (AR 44.) She was not able to work because of her condition. (AR 45.) Plaintiff would not have tried to work even if they had offered her a job. (AR 73.) She could not

do even part-time work. (AR 73.)

From 2008 to 2012, Plaintiff worked in housekeeping at Unawell Fresno Hotel. (AR 45-46.) Plaintiff would clean the lobby and the hotel rooms. (AR 46.) She would lift 35 to 40 pounds. (AR 46.) In her original statement, she wrote that the heaviest she lifted was 20 pounds but she lifted cleaning buckets. (AR 46.) Plaintiff was mostly standing and walking in this job. (AR 46.)

Plaintiff is unable to work because to pain in her arms, back, knee, and leg. (AR 47.) She is unable to bend because of her back. (AR 47.) She cannot lift because of her arms. (AR 47.) She has no strength in her hands. (AR 47.) She also has pain in both knees, but more pain in the left knee. (AR 47.) Plaintiff always has pain. (AR 47.) On a typical day, Plaintiff's pain is between 7 and 8 on a scale of 10. (AR 48.) Activities make her pain worse and sometimes lying or sitting down will make the pain worse. (AR 48.) The pain will be worse when she sweeps or mops. (AR 48.) It takes Plaintiff a long time to take a shower because of her arms and then she has to lie down and rest. (AR 48.) Plaintiff has trouble lifting her arms up high. (AR 49.) She can lift her arms comfortably to shoulder level. (AR 49.) She is unable to lift her arms above shoulder level. (AR 49.) Plaintiff could only reach forward in front of her less than half of a day because of her arms and back. (AR 72.)

Plaintiff went to physical therapy and it did help her back pain a little bit. (AR 48.) Plaintiff also has a TENS unit that she uses as much as she can, almost every day. (AR 49-50.) When she uses it, she uses it for a half hour to an hour. (AR 50.) Plaintiff has not had surgery or injections for her back. (AR 50.) Plaintiff takes naproxen and baclofen for pain and spasms which helps a little bit. (AR 50.) Plaintiff's pain will be a six or seven after taking her medication. (AR 50.)

Plaintiff takes medication for her diabetes that controls her blood sugars. (AR 51.) She does not regularly monitor her blood sugar. (AR 51.) Plaintiff has sharp pains in her feet and trouble walking every day that lasts for five to ten minutes. (AR 51.) When this occurs, she will sit down and elevate her feet. (AR 51.) Plaintiff regularly takes medication that controls her blood pressure. (AR 51-52.) She does not have any side effects from her blood pressure

medication. (AR 70.) It does not make her have to use the restroom much, but she does have to go to the bathroom more frequently. (AR 70-71.) She has to go to the bathroom every 5 or 10 minutes for about an hour. (AR 71.)

Plaintiff has complete hearing loss in the right ear. (AR 52.) She was born with a deaf ear. (AR 53.) As she is getting older, for about the past ten years, she has had some hearing loss in the left ear. (AR 53-54.) She has not had any testing or treatment for the hearing loss in her left ear. (AR 54.) She did not have medical insurance before and now that she has medical insurance she does not know if it will cover it. (AR 54.) She has never tried to have her hearing tested. (AR 54.) When she was working as a housekeeper she had problems almost daily hearing which required the staff workers to have to repeat themselves. (AR 55.) She told her doctor about the hearing issue and was told to go to a hearing aid doctor but was not given a referral. (AR 55.)

For five or more years, Plaintiff has had instances of her eyes twitching which causes blurry vision. (AR 55, 56.) She does wear glasses for reading. (AR 56, 57.) She does not wear glasses for anything other than reading although her vision is a little blurry. (AR 57-58.) Plaintiff has not seen an eye doctor since February of 2013 because she does not have insurance. (AR 56.) Now that she has insurance she is taking care of other doctors and dentist appointments first. (AR 56-57.)

Plaintiff does have some nausea for about 10 minutes after taking her medication. (AR 58.) She does not need an assistive device to walk or stand. (AR 58.) Plaintiff can stand five to seven minutes at the most due to back pain. (AR 58.) She can sit for ten to twenty minutes. (AR 58-59.) Plaintiff can walk about two blocks and it would take her about ten minutes. (AR 59.) Plaintiff cannot lift more than five pounds because of her shoulder regardless of whether it is lifting above shoulder level. (AR 59.) The most she might be able to lift is ten pounds. (AR 60.) Plaintiff cannot bend all the way down, but can bend to knee level. (AR 61.)

Plaintiff has some dizziness for which she is taking medication. (AR 73.) It is a big problem. (AR 73.) She gets dizzy when she is standing or walking. (AR 74.) The dizziness comes and goes. (AR 73.) It happens once or twice a week and lasts for about ten minutes. (AR

73.)

On a typical day, Plaintiff just relaxes, watches television, and walks around the house a little bit. (AR 61.) Plaintiff bathes every day and is able to do that by herself. (AR 61.) Plaintiff cooks once a day. (AR 61.) Plaintiff will cook eggs for breakfast in the morning. (AR 61.) She will sometimes cook when it has been a long day. (AR 61.) Plaintiff has problems cutting and in her back when standing too much. (AR 61-62.) She has a chair in her kitchen so she can take a break when she is in the kitchen. (AR 62.) She has trouble cutting because sometimes her fingers get stiff. (AR 62.) She told her doctor and they are going to check into that. (AR 62.)

Plaintiff goes grocery shopping once a month for about half an hour. (AR 63.) Carrying grocery bags is difficult. (AR 63.) She tries to do the best she can. (AR 63.) She holds the bags out straight in front of her. (AR 63.) Plaintiff mops once or twice a week. (AR 64.) She will have to stop after the first two minutes. (AR 64.) Sometimes she does not start up again and will leave it for another day. (AR 64.) Every time Plaintiff mops or sweeps she has to stop after two minutes. (AR 64.) Plaintiff never mops or sweeps for more than two minutes. (AR 65.) The most Plaintiff will mop is two or three minutes. (AR 65.) When she feels the pain she will have to stop. (AR 65.) Plaintiff never finishes mopping the same day she starts. (AR 69.) The kitchen and the bathroom have to be mopped. (AR 70.) It is a big kitchen. (AR 70.) Plaintiff has a mop that you rinse in the sink. (AR 70.)

Plaintiff does not go anywhere other than the grocery store or doctor appointments. (AR 65.) Plaintiff never goes out to eat, or to church or to visit friends. (AR 65.) She does not really have any friends. (AR 65.) Plaintiff went out to eat with her daughter last month. (AR 65-66.) Plaintiff goes out to eat with her daughter about once a month. (AR 66.)

Plaintiff has no hobbies. (AR 66.) She has two Chihuahuas. (AR 66.) Plaintiff takes care of them. (AR 67.) She takes them into the backyard but never walks them for exercise. (AR 67.)

When Plaintiff's counsel pointed out that she had been sitting for thirty minutes or a little more during the hearing, Plaintiff testified that she was just holding on. (AR 67.) She was

hurting. (AR 68.) She would typically get up after twenty minutes at home. (AR 68.) Plaintiff would be able to sit for another ten to twenty minutes before having to get up. (AR 68.) She is able to sit for 45 minutes uncomfortably. (AR 68.)

A vocational expert ("VE"), Thomas C. Dachelet also testified at the hearing. (AR 75-83.)

**B.   ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2018.

- Plaintiff has not engaged insubstantial gainful activity since February 27, 2013, the alleged onset date.

- Plaintiff has the following severe impairments: diabetes mellitus, hypertension with dizziness, degenerative changes of the lumbar spine with nerve root compression, minimal degenerative changes of the left knee, minimal degenerative changes of the right AC joint, mild degenerative changes of the left shoulder, and obesity.

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

- Plaintiff has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567b and 416.967b. Specifically, she could lift and/or carry twenty pounds occasionally and ten pounds frequently; sit for six hours per eight-hour workday; and stand and/or walk for six hours per eight-hour workday all with normal breaks. Plaintiff could frequently stoop; occasionally reach overhead with the bilateral upper extremities; and frequently push or pull with the left upper extremity. She must avoid exposure to hazards such as unprotected heights and unstable moving machinery.

- Plaintiff is capable of performing past relevant work as a maid. This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.

- Plaintiff has not been under a disability as defined in the Social Security Act from

February 27, 2013, through the date of the decision.

(AR 24-29.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred because the residual functional capacity is not supported by substantial evidence and also by not explaining why she accepted some of Plaintiff's symptom testimony and rejected other testimony. Plaintiff seeks remand for further administrative findings. Defendant responds that the ALJ properly evaluated Plaintiff's residual functional capacity. Further, Defendant argues that the ALJ gave proper reasons to find Plaintiff's symptom testimony not credible.

### A. The Residual Functional Capacity Finding is Not Supported by Substantial Evidence

Plaintiff contends that the ALJ erred in assessing the degree of impairment that is caused by her spinal impairment because no physician reviewed the June 9, 2015 MRI which showed that Plaintiff had severe degenerative reduction in disc space at the L3-4 and L4-5 levels, as well as possible compression of the left exiting nerve root at L3-4. Plaintiff argues that the state

agency physicians determined that Plaintiff's physical impairments were not severe and did not take into account the results of this MRI which would reasonably impose some limitations. Plaintiff asserts that the ALJ reviewed the MRI results and made his own interpretation of the medical evidence which he may not do.

Defendant responds that Plaintiff is under the mistaken impression that the RFC assessment must be based on a medical opinion but determination of the RFC is a legal decision that is expressly reserved through the Commissioner through her delegate, the ALJ. Defendant contends that the ALJ properly took into account all those limitations in the record for which there is support and that were not properly rejected. Defendant argues that the RFC reasonably accommodated Plaintiff's back pain by limiting her to light work and the decision should be affirmed.

A claimant's residual functional capacity is the most the individual can still do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing the claimant's RFC, the ALJ is to consider all medically determinable impairments, including those impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2). Where a claimant has physical limitations, the ALJ considers the claimant's ability to do physical activities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)[.]" 20 C.F.R. §§ 404.1545(b); 416.945(b).

The RFC is "based on all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). "The ALJ must consider a claimant's physical and mental abilities, § 416.920(b) and (c) [§ 404.1520(b) and (c)], as well as the total limiting effects caused by medically determinable impairments and the claimant's subjective experiences of pain, § 416.920(e) [§ 404.154(e)]." Garrison v. Colvin, 759 F.3d 995, 1011 (9th Cir. 2014).

Here, as relevant to Plaintiff's back pain, the ALJ considered the medical record, including recent examinations which indicated moderate tenderness and reduced range of motion. (AR 27, 354, 358.) Diagnostic imaging performed to investigate the claimant's arthralgic complaints showed mild degenerative changes of the lumbar spine. (AR 27, 329.)

Plaintiff reported medications relieved her pain and subsequent treatment notes document conservative treatment modalities including the use of a TENS unit and physical therapy. (AR 27, 320, 323.) An April 2014 examination noted an antalgic gait and moderately reduced range of motion of the lumbar spine but Plaintiff required no assistive device to ambulate. (AR 27, 357-358.) The ALJ also noted that recent treatment notes do not consistently document chronic problems after treatment with the TENS unit and physical therapy. (AR 27.) After the hearing, Plaintiff submitted an MRI report dated June 9 2015 which indicated bilateral chronic pars defect at the L5-S1 vertebral level with spinal narrowing and compression of the bilateral exiting nerve roots and broad-based circumferential disc bulges at the L3-L4 and L4-L5 vertebral levels. (AR 27, 379.)

The ALJ gave no weight to opinions of the agency physicians who considered the record in November 2013 and January 2014 and opined that Plaintiff had no severe physical impairments finding the additional evidence in the record received at the hearing level suggests greater limitations. (AR 27, 91-92, 100-102, 91-92, 100-102.)

The ALJ also gave no weight to the opinion of Dr. Stoltz who following a consultative examination found that Plaintiff had no functional restrictions. (AR 28, 310-315.) The ALJ found that Dr. Stolz' opinion was not fully consistent with his own examination or the other objective evidence of record. (AR 28.)

After rejecting all the doctor's opinions, the ALJ concluded that Plaintiff would be capable of a reduced range of light work with postural manipulative and environmental restrictions. (AR 28.) The ALJ found that the RFC is supported by the weight of the objective evidence and the Plaintiff's less than credible testimony as no physician of record has indicated the presence of any limitations. (AR 28.)

While it is true that Plaintiff has only received conservative treatment for her back pain, the record demonstrates that after the agency physicians reviewed the record, in January of 2014, Plaintiff complained that the over the counter medications were not relieving her back pain. (AR 360.) Plaintiff was found to have an antalgic gait, although she was full weight bearing and did not need an assistive device. (AR 362.) On examination, Plaintiff had no pain on straight leg

raising test on the right, but pain radiating on the left. (AR 362.) She had some decreased range of motion in the lumbar spine. (AR 362.)

Plaintiff attended physical therapy from February 6, 2014 through March 31, 2014. (AR 366-367.) On discharge it was noted the Plaintiff rated her low back pain at 3/10 at best and 8/10 at worse and it was more of a pressure sensation now. (AR 366.) Plaintiff's aggravating activities were the same but she modifies her activities. (AR 366.) Plaintiff had moderate tenderness at L5 and gluts with continuing tension in bilateral piriformis. (AR 366)

The physical therapist noted Plaintiff had decreased tolerance for daily bending, cleaning and lifting activities secondary to lower back pain. (AR 367.) While the record is difficult to read due to the quality of the copy, the gist is that Plaintiff had significant range of motion and strength deficits limited by pain. (AR 367.) It was difficult to determine if this was due to weakness or just strength significantly limited by pain. (AR 367.) Plaintiff had made slight gains in range of motion through the L/5 and pain/tenderness reduction. (AR 367.) But she continues to have weakness and pain that limits her activity. (AR 367.) Plaintiff has improved in pain management with acquisition of TENS unit and practicing regimen modification and will benefit from extending her home exercise program. (AR 367.)

On April 30, 2014, Plaintiff reported that her pain medication was providing her with some pain relief – moderate. (AR 357.) She was also receiving relief from the TENS unit and heating pad. (AR 357.) Her gait was antalgic and she had lumbar spine tenderness with moderately reduced range of motion. (AR 357.)

On May 29, 2014, Plaintiff reported that her current pain medication was providing her with relief. (AR 352.) On examination she had lumbar spine and shoulder tenderness and moderately reduced range of motion. (AR 352.) Plaintiff had a normal gait. (AR 352.)

On August 19, 2014, Plaintiff complained that her medication was not helping her back pain and requested a higher dose or a different medication. (AR 346.) Plaintiff had a normal examination other than some tenderness in the spine. (AR 349.)

Plaintiff had a normal physical examination on October 3, 2014 and January 26, 2015. (AR 344, 340.)

On June 9, 2015, Plaintiff had an MRI of the lumbar spine that showed

1. Bilateral chronic pars defect al L5-S1 level with grade 2 anterolisthesis of L5 over SI. Severe narrowing of bilateral lateral recess and neural foramina. Compression or bilateral exiting nerve roots left more than right.
2. Severe degenerative reduction in disc space. Mild disc desiccation and broad-based circumferential disc bulges at L3-L4 and L4-L5 level. Bilateral hypertrophic facet arthropathy at L3-L4 level with moderate to severe narrowing of the bilateral lateral recess and neural foramina left more than right. Possible compression of the left exiting nerve root.

(AR 379.)

While the ALJ found that Plaintiff was able to perform light work because no physician had opined that the presence of any limitations, there is no evidence in the record that any physician has reviewed these objective findings to opine the limitations that they would impose on Plaintiff. A claimant's residual functional capacity is not a medical opinion, but is an issue to be decided by the ALJ. 20 C.F.R. §§ 404.1527(d)(2), 416.920(d)(2). However, the finding must be supported by substantial evidence in the record and the ALJ must explain his reasoning behind the RFC. 42 U.S.C. § 405(b); 20 C.F.R. §§ 404.1520c, 416.920c.

Here, the ALJ stated that the RFC was supported by the weight of the objective evidence and Plaintiff's less than credible testimony. But the Court is unable to determine how the ALJ arrived at the conclusion that Plaintiff was capable of light work. Absent adequate explanation of the record, without specific support from a medical source, and with no testimony from a medical expert, the ALJ appears to have defined his own limitations for Plaintiff. The Court finds that this was error. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (the ALJ was not qualified as a medical expert and therefore could not permissibly go outside the record to consult medical textbooks for purpose of making his own assessment of the claimant's physical condition); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, ... the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Accordingly, the Court finds that the residual functional capacity assessment is not

supported by substantial evidence.

**B.     The Court Declines to Address the Credibility Finding**

Plaintiff argues that the ALJ failed to explain the basis upon which certain elements of her testimony were rejected in formulating the RFC. Defendant counters that the ALJ properly considered Plaintiff's testimony and properly found it was not fully supported by the record.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). An "ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted).

Here, the ALJ found that Plaintiff's symptoms were not as severe as alleged based upon her daily activities, conservative treatment, and varied objective findings on examination. Since this matter is being remanded for further evaluation of the medical evidence which may affect the credibility determination, the Court declines to further address the credibility finding. Upon remand, the ALJ may consider if the physician evaluation of the recent evidence regarding Plaintiff's back impairment changes the credibility analysis.

**C.     The Matter is Remanded for Further Administrative Proceedings**

The ordinary remand rule provides that when "the record before the agency does not support the agency action, ... the agency has not considered all relevant factors, or ... the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). This applies equally in Social Security cases. Treichler, 775 F.3d at 1099. Under the Social Security Act "courts are empowered to affirm, modify, or reverse a

decision by the Commissioner '*with or without* remanding the cause for a rehearing.' " Garrison, 759 F.3d at 1019 (emphasis in original) (quoting 42 U.S.C. § 405(g)). The decision to remand for benefits is discretionary. Treichler, 775 F.3d at 1100. In Social Security cases, courts generally remand with instructions to calculate and award benefits when it is clear from the record that the claimant is entitled to benefits. Garrison, 759 F.3d at 1019.

In this instance, the Court finds that the record has not been sufficiently developed to determine what, if any, functional limitations Plaintiff has due to her severe impairments. Accordingly, this action shall be remanded for further development of the record. On remand, the ALJ shall obtain physician review of the medical evidence subsequent to the agency determination that Plaintiff did not have a severe impairment to determine the limiting effects of Plaintiff's impairments in determining her residual functional capacity.

## V.
## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the residual functional capacity assessment is not supported by substantial evidence in the record.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED, and this matter is REMANDED for further administrative proceedings consistent with this opinion. It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Eulalia Perez and against Defendant Commissioner of Social Security. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **February 5, 2018**

UNITED STATES MAGISTRATE JUDGE